

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN, TEXAS 78711

JOHN L. HILL
ATTORNEY GENERAL

December 3, 1973

The Honorable Clayton T. Garrison
Executive Director
Texas Parks & Wildlife Department
John H. Reagan Building
Austin, Texas 78701

Dear Mr. Garrison:

Opinion No. H- 170

Re: The authority of the Texas
Parks & Wildlife Department
to contract with counties for
the cleaning and maintenance
of a public beach located
within a state park

You have requested our opinion on the following questions:

"1. Does the Parks and Wildlife Department have
authority to contract with a county to authorize
the county to clean and maintain a public beach
located within a state park if the county meets
the requirements of Article 5415d-1, V. T. C. S. ?

"2. [If the answer to question 1 is in the affirmative,
d]oes the Parks and Wildlife Department have
authority to reimburse a county for cleaning a
public beach within a state park out of funds
[specifically] appropriated to the Department
[in Item 20 of the Appropriations Act for fiscal
1974 and 1975]? "

Counties which meet the requirements of Article 5415d-1 are all counties
which border on the Gulf of Mexico and have public beaches within their boun-
daries. Section 5 of that Article allocates the responsibility for cleaning and
maintaining public beaches among the State, counties and incorporated cities.
The State has the duty of cleaning and maintaining public beaches located within
state parks, and a county has the duty of cleaning and maintaining public beaches
located within that county but outside of an incorporated city. Sections 8 and 9
of the Article permit counties to contract with cities and other counties for

beach maintenance services, and § 7 provides a mechanism by which the State may pay a portion of the costs incurred by cities and counties in cleaning and maintaining the city and county beaches. The Act does not specifically refer to contracting authority between the State and a county for the maintenance of state park beaches.

We believe the Parks and Wildlife Department and counties have ample authority to contract with each other for the maintenance of state parks by virtue of § 1 of Article 608lr, V. T. C. S. , which provides, in part:

> " . . . The Parks and Wildlife Department is hereby authorized and directed to cooperate . . . will all other departments of the state and local governments . . . . It is the intent of the Legislature to add to the purposes, functions and duties of . . . counties, to acquire lands for public recreation purposes, to construct thereon facilities for public use, to provide for the operation, maintenance and supervision of such public recreation areas, and to enter into agreements with other local, state or Federal Agencies for planning, construction, maintenance, and operation of such facilities, together with necessary access roads thereto, and to maintain adequate sanitary standards on the land and water areas as a part of and adjacent to such recreation areas. "
> (emphasis added)

Article 608lr is the vehicle by which Texas became eligible to receive grants under the Land and Water Conservation Act of 1965, 16 USC § 4601-4 to 11. That Act and the Texas Article 608lr require a comprehensive state-wide plan for the development of outdoor recreation resources. We believe the Legislature necessarily included state parks in the scope of Article 608lr, and thus authorized a county to contract with the State for maintenance of a state park. Cf. Interagency Cooperation Act, Art. 4413 (32), V. T. C. S. ; Interlocal Cooperation Act, Art. 4413(32c), V. T. C. S.

Any contract would be subject to the prohibitions of Article 3, § 51, of the Texas Constitution, and a county would be required to provide actual services before it would be eligible to receive state funds. Although the type of

contract you mention appears to avoid any Article 3, § 51, problem, your attention is directed to Attorney General Opinion No. H-109 (1973) for a discussion of the constitutional prohibition.

Your second question involves the use of funds appropriated for "beach cleaning" in Item 20, p. III-113, of the Appropriations Act for fiscal 1974 and 1975 (House Bill 139, 63rd Legislature) to pay a county for its services rendered in cleaning a state park beach. That item provides:

|  | For the Years Ending | |
|---|---|---|
|  | August 31, 1974 | August 31, 1975 |
| "20. For payments to cities and counties for maintenance and cleaning of Public beaches NTE [not to exceed] $50,000 for any single grant, subject to equal matching and contingent upon there being no admission fees charged for entry onto such beaches | 200,000 | 200,000" |

The "pre-existing law" required by Article 3, § 44, of the Constitution to support the appropriation in Item 20 is Article 5415d-1, V. T. C. S. , an act designed "to allocate responsibility for cleaning the beaches of this state. . . ." [§ 1(a)].

Section 7 provides for a "state share" of the cost of cleaning beaches. Section 7(c) reads:

"(c) No county or city shall receive as its 'state share' a sum greater than one-half the amount such county or city expends for the purpose of cleaning and maintaining public beaches within its jurisdiction during the state fiscal year for which reimbursement is sought,

nor shall any such county or city receive as its 'state
share' a sum greater than $50,000 for any state fiscal
year."

Your first question requires a determination of the meaning of "public
beaches within its jurisdiction, " i.e., whether this refers to city or county
beaches or to State-owned state park beaches as well.

The Act applies to home-rule cities with more than 60,000 inhabitants
and counties on the Gulf of Mexico having within their boundaries "public
beaches, " defined by § 11(b) as a beach area, whether public or privately
owned, to which the public has acquired the right of access.

The responsibility for cleaning public beaches within its corporate
boundaries is placed upon a city, town or village; for those not within a
city, upon the counties; and for those within state parks, upon the State. (§ 5)

The provisions would lead to the conclusion that "public beaches
within its jurisdiction" refers to those over which each unit of government
is given responsibility by § 5, and that the Item 20 funds were not to be
"shared" with cities and counties for state park beaches.

However, § 1(b) states it to be the public policy of the state that the
right to access to public beaches "creates a responsibility for the state. . .
to assist local governments in the cleaning of beach areas which are subject
to the access rights of the public as defined by Chapter 19, Acts of the 56th
Legislature, 2nd Called Session, 1959, as amended (Article 5415d, Vernon's
Texas Civil Statutes). " That statute applies to access to state-owned beaches,
and would seem to lead to the conclusion that "public beaches" within the
jurisdiction of cities or counties of Article 5415d-1 include state-owned beaches.

Therefore, it is our opinion that Item 20 funds may be used to reimburse
a county for cleaning a public beach within a state park provided the county is
willing to meet the requirements of the appropriation. You did not ask and we
do not answer what other appropriated funds may be used for that purpose.

## SUMMARY

The Texas Parks and Wildlife Department and counties on the Gulf Coast have authority to contract with each other for the cleaning and maintenance of state park beaches. The Department may use funds appropriated specifically in Item 20 of the Appropriations Act for 1974 and 1975 to reimburse a county for its services in maintaining state park beaches provided the county is willing to meet the conditions of the appropriation.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee